UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Arthur Langlais

    v.

Kristen E. Brenner-Currier and
Enfield Land Company, LLC

Civil No. 20-cv-234-JL
Opinion No. 2020 DNH 175P

# ORDER

Resolution of the defendants' motion to dismiss this contract-based action turns on whether the plaintiff has pleaded facts supporting his fraud claims with the requisite specificity and particularity.  The plaintiff, Arthur Langlais, brought this suit against defendants Kristen E. Brenner-Currier and Enfield Land Company, LLC. In 2019, Langlais and Brenner-Currier entered into agreements for Langlais to sell to Brenner-Currier his interest in two New Hampshire companies:  Enfield and Montcalm Golf, LLC.  Langlais alleges that he assigned his interest in the companies to Brenner-Currier, but that Brenner-Currier breached the contract because she did not complete certain contractual obligations, including tendering payment to Langlais for Enfield.  Langlais also alleges that Brenner-Currier then fraudulently transferred the interest in Enfield to her husband without consideration.  Finally, Langlais claims that Brenner-Currier was insolvent when she signed the agreements and thus fraudulently misrepresented her willingness to pay him.  The plaintiff asserts three claims against both Brenner-Currier and Enfield:  Breach of Contract (Count 1); Fraudulent Conveyance (Count 2); and Fraudulent Misrepresentation (Count 3).[1]

---

[1] Defendants counterclaim that Langlais did not comply with his contractual obligations to "continue operating both Montcalm Golf Club, LLC and Enfield Land Company, LLC in a manner that was reasonable, appropriate, and consistent with applicable law . . . until the transfer

The defendants have moved to dismiss all claims against both defendants—except the breach of contract claim against Brenner-Currier—for failing to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). In doing so, they argue that Langlais (1) has not pleaded facts to support any claims against Enfield; (2) has not adequately pleaded fraudulent intent as to both fraud-based claims; and (3) has not pleaded facts concerning the alleged fraudulent misrepresentation with particularity, as required under the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

The court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) (diversity). After reviewing the parties' submissions and holding oral argument, the court grants the motion in part and denies it in part. The court grants the motion with respect to the claims against Enfield because the allegations against Enfield lack factual allegations to support the basic elements of the claims, and Langlais does not dispute the insufficiency of the allegations. The court denies the motion with respect to the claims against Brenner-Currier because the complaint pleads facts to support claims of fraudulent conveyance and fraudulent misrepresentation and satisfies the heightened pleading requirements of Rule 9(b).

## I. Applicable legal standard

"A pleading that states a claim for relief must contain," among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, a plaintiff must include "factual content that allows the

---

of Langlais's interests in both Montcalm Golf, LLC and Enfield Land Company, LLC was complete." Defs.' Answer to Compl. (doc. no. 4) at 5. Langlais has not moved to dismiss the counterclaim.

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Martinez v. Petrenko, 792 F.3d 173, 179 (1st Cir. 2015).

Langlais states that his claims should only be denied "if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory."[2] The defendants argue that this standard is derived from Conley v. Gibson, 355 U.S. 41 (1957), which was overturned by the Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).[3] And the defendants are correct. Beckwith's 'any viable theory' language is derived from the rule from Conley, 355 U.S. at 45-46, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." That was good law when Beckwith was decided, but the Supreme Court later invalidated Conley's 'no set of facts' language, concluding that it "has earned its retirement." Twombly, 550 U.S. at 563. The Supreme Court then advanced the pleading requirements set forth above.

This pleading standard, however, "is not universally applicable." Rodi v. S. New Eng. Sch. Of Law, 389 F.3d 5, 15 (1st Cir. 2004). Claims sounding in fraud or mistake are subject to heightened pleading standards. See N. Am. Catholic Educ. Prog. Found, Inc. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This means that a complaint rooted in fraud must specify the "who, what, where, and when of the allegedly false or fraudulent representations." Rodi, 389 F.3d at 15. Further, "Rule 9(b) requires not only specifying the false

---

[2] Pl.'s Opp'n (doc. no. 12) at 5 (citing Beckwith Builders, Inc. v. Depietri, 81 U.S.P.Q.2d 1302, 1307 (D.N.H. Sept. 15, 2006)).

[3] See Defs.' Reply (doc. no. 13) at 2, 2 n.1.

3

statements and by whom they were made but also identifying the basis for inferring scienter." Cardinale, 567 F.3d at 13.  If the plaintiffs cannot do so, they "cannot proceed merely on the hope that [they] will find more."  Universal Commc'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 427 (1st Cir. 2007).  The heightened pleading standard "extends only to the particulars of the allegedly misleading statement [and] . . . [t]he other elements of fraud, such as intent and knowledge, may be averred in general terms."  Rodi, 389 F.3d at 15; see also Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

Finally, at the Rule 12(b)(6) stage, the court must "take the complaint's well-pleaded facts as true," and "draw all reasonable inferences in the plaintiffs' favor."  Barchock v. CVS Health Corp., 886 F.3d 43, 48 (1st Cir. 2018).  But "[w]ell-pleaded facts must be 'non-conclusory' and 'nonspeculative.'"  Id. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal."  Id.

**II.     Background**

The court gathers the following facts from the complaint and from information contained in the documents on which the complaint relies and which are central to the plaintiff's claims.  See Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007) (in determining the sufficiency of the complaint under Rule 12(b)(6), the court may consider "documents central to plaintiffs' claim [and] . . . documents sufficiently referred to in the complaint" (internal quotation omitted)).

In 2018, Langlais purchased a 100% interest in two New Hampshire companies: Enfield and Montcalm Golf.[4] On January 23, 2019, Langlais and Charles Currier (Brenner-Currier's husband) entered into an agreement under which Langlais agreed to sell, and Brenner-Currier agreed to purchase, a 50% interest in Enfield and a 50% interest in Montcalm Golf.[5] Langlais and Currier closed on the purchase and sale on February 13, 2019.[6]

About six months after closing, Langlais and Brenner-Currier entered into an agreement under which Langlais agreed to sell, and Brenner-Currier agreed to purchase, Langlais's remaining 50% interest in both Enfield and Montcalm Golf.[7] On the same day, the parties executed a Letter of Intent agreeing on the terms and conditions of the sale, including the purchase price.[8] Langlais alleges that Brenner-Currier was insolvent as of July 16, 2019, when she signed the agreement.[9]

## A.     Sale of Montcalm Golf

Under the Letter of Intent, Langlais agreed to execute a "Non-Recourse Assignment of Membership Interest" in Montcalm Golf prior to receiving payment from Brenner-Currier.[10] Brenner-Currier also agreed to "assume liability for Langlais' share of any and all liabilities

---

[4] Complaint (doc. no. 1) ¶¶ 9, 12.

[5] Complaint ¶ 15.

[6] Complaint ¶ 16.

[7] Complaint ¶ 17.

[8] Complaint ¶¶ 18, 20.

[9] Complaint ¶ 59.

[10] Complaint ¶ 23; Complaint Exhibit 1, Letter of Intent ¶ 3.

incurred on behalf of Montcalm Golf, LLC and [] complete all necessary documents required from vendors and lenders."[11] The parties agreed to close on July 19, 2019.[12]

On July 18, 2019, the parties signed a Memorandum of Agreement,[13] attached as Exhibit 2 to the complaint, memorializing the purchase price for Montcalm Golf and the same language regarding Brenner-Currier's assumption of liabilities and the completion of the necessary documents.[14] That same day, Langlais executed the Non-Recourse Assignment of Membership Interest,[15] and Brenner-Currier accepted the assignment.[16] On the day of closing, July 19, Brenner-Currier paid the agreed-upon purchase price to Langlais.[17] But as of the date that the complaint was filed, Brenner-Currier had not yet assumed Langlais's share of liabilities incurred on behalf of Montcalm Golf or completed the documents required for vendors and lenders, as agreed to under the Letter of Intent and Memorandum of Agreement.[18]

**B.   Sale and transfer of Enfield**

Under the Letter of Intent, Langlais agreed to execute a Non-Recourse Assignment of Membership Interest in Enfield prior to receiving payment from Brenner-Currier.[19] The parties

---

[11] Complaint ¶ 21 (quoting Complaint Exhibit 1, Letter of Intent ¶ 4(a)).

[12] Complaint ¶ 22.

[13] Complaint ¶ 24.

[14] Complaint Exhibit 2, Memorandum of Agreement ¶¶ 2-3.

[15] Complaint ¶ 25.

[16] Complaint Exhibit 3, Montcalm Golf Assignment.

[17] Complaint ¶ 26.

[18] Complaint ¶ 27.

[19] Complaint ¶ 31; Complaint Exhibit 1, Letter of Intent ¶ 5.

agreed that the closing date would be on or before August 30, 2019, and payment would be made on the closing date.[20]

On August 25, Langlais executed the Non-Recourse Assignment of Membership Interest,[21] and Brenner-Currier accepted the assignment.[22] The next day, Langlais alleges, Brenner-Currier assigned her 100% membership interest in Enfield to Currier—her husband—without consideration,[23] and she concealed this transfer from Langlais.[24] Brenner-Currier did not complete any portion of the payment to Langlais on August 30 or thereafter.[25] Brenner-Currier has also "willfully ceased communicating with" Langlais.[26]

### III. Analysis

As mentioned above, the plaintiff asserts three claims against both defendants: Breach of Contract (Count 1); Fraudulent Conveyance (Count 2); and Fraudulent Misrepresentation (Count 3). The defendants have moved to dismiss all of the claims, except for the breach of contract claim against Brenner-Currier. As explained below, and as Langlais does not dispute, the plaintiff has not pleaded facts supporting his three claims against Enfield. But Langlais has

---

[20] Complaint Exhibit 1, Letter of Intent ¶ 5.

[21] The Enfield Assignment is attached as Exhibit 4 to the complaint. Langlais alleges in the complaint that he executed the Assignment on August 25, 2019. Complaint ¶ 32. The signatures are dated August 25, 2019, but the document states that it was executed on August 26, 2019. This discrepancy is not material to the court's analysis.

[22] Complaint Exhibit 4, Enfield Assignment.

[23] Complaint ¶ 46.

[24] Complaint ¶ 51.

[25] Complaint ¶¶ 44-45, 48.

[26] Complaint ¶ 29.

pleaded facts supporting his fraud-based claims against Brenner-Currier as required by the pleading standards applicable to fraud claims.

**A.      Claims Against Enfield**

Enfield argues that all three claims against it should be dismissed because Langlais does not allege facts stating the basic elements of the claims. Langlais does not oppose dismissal of the claims in his opposition brief. Further, at oral argument, counsel for the plaintiff conceded that dismissal of the claims against Enfield is appropriate. The court accordingly dismisses the breach of contract, fraudulent conveyance, and fraudulent misrepresentation claims against Enfield.

**B.      Fraudulent conveyance claim against Brenner-Currier**

Brenner-Currier moves to dismiss the fraudulent conveyance claim against her. Under New Hampshire's Fraudulent Transfer Act:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
>> (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>
>> (2) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

N.H. Rev. Stat. Ann. § 545-A:4, I.

The statute thus provides for two types of fraudulent transfers. First, transfers are actually fraudulent if made with actual intent to defraud, as outlined in RSA 545-A:4, I(a).

Second, transfers are constructively fraudulent under the circumstances outlined in RSA 545-A:4, I(b).

A party may demonstrate that a transfer is actually fraudulent through direct evidence of fraudulent intent; alternatively, courts can "infer fraudulent intent from the circumstances surrounding the transfer." In re Coffey's Case, 157 N.H. 156, 178 (2008) (citing Max Sugarman Funeral Home, Inc. v. A.D.B. Investors, 926 F.2d 1248, 1254 (1st Cir. 1991)). Because "debtors will rarely admit an intent to hinder, delay, or defraud a creditor, courts have long considered objective 'badges of fraud' in determining the existence of fraudulent intent." Id. "Badges of fraud are 'circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent.'" Foisie v. Worcester Polytechnic Institute, 967 F.3d 27, 51 (1st Cir. 2020) (quoting Sharp Int'l Corp. v. State St. Bank & Tr. Co., 403 F.3d 43, 56 (2d Cir. 2005)). New Hampshire's fraudulent conveyance statute lists several badges of fraud, or "factors" that may be considered "[i]n determining actual intent . . . ." RSA 545-A:4, II. "While 'the presence of a single badge of fraud may spur mere suspicion, the confluence of several can constitute conclusive evidence of an actual intent to defraud, absent significantly clear evidence of a legitimate supervening purpose.'" In re Coffey's Case, 157 N.H. at 178 (quoting Max Sugarman, 926 F.2d at 1254-55).

Brenner-Currier concedes that Langlais "alleges adequately that he had a 'claim' against Brenner-Currier, that his claim makes him a 'creditor' of Brenner-Currier, and that she transferred her interest in Enfield Land Company to Charles Currier."[27] Brenner-Currier instead challenges the sufficiency of the plaintiff's allegations of a single element of the claim: fraudulent intent.

---

[27] Defs.' Mem. in Supp. of Mot. to Dismiss (doc. no. 11-1) at 4.

9

As Brenner-Currier argues, the plaintiff's "two constructive fraud allegations in paragraph fifty of his Complaint are [] insufficient" and contain "stripped-from-the-statute allegations . . . ."[28] Those conclusory statements, which merely repeat the statutory language,[29] do not constitute factual allegations that allow the court to draw a reasonable inference of constructive fraud.  See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 15 (1st Cir. 2011)) (stating that under Rule 12(b)(6), courts should "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements.").

But Langlais has pleaded facts supporting a claim for actual fraud.  In describing the insufficiency of Langlais's allegations of actual fraud, Brenner-Currier focuses on Paragraph 49 of the complaint, which alleges that Brenner-Currier transferred the interest in Enfield despite knowing that she had not yet paid Langlais.  Brenner-Currier is correct that "a mere failure to pay does not" in and of itself "create a fraud claim," and federal law requires Langlais to "set forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading."[30]

Though the conclusory allegations in Paragraph 49 of the complaint alone may not suffice to state a claim of actual fraudulent intent, Langlais has also pleaded facts alleging the presence of statutory badges of fraud, from which the court can infer the complaint's allegation of Brenner-Currier's actual fraudulent intent.  Though Langlais did not advance arguments regarding the badges of fraud in his opposition brief, he did allege the presence of four badges of

---

[28] Defs.' Reply (doc. no. 13) at 3.

[29] Complaint ¶ 50.

[30] Defs.' Reply (doc. no. 13) at 3 (quoting Cardinale, 567 F.3d at 13).

fraud in his complaint, and the law permits the court to infer actual fraudulent intent from the confluence of these allegations. See In re Coffey's Case, 157 N.H. at 178.

First, Langlais alleges that Brenner-Currier "assigned her 100% membership interest in Enfield Land Company, LLC to her husband, Charles C. Currier."[31] Completing a transfer "to an insider" is one of the statutory badges of fraud. RSA 545-A:4, II(a). And transfer between spouses is considered a transfer between insiders under New Hampshire's fraudulent conveyance statute. In re Coffey's Case, 157 N.H. at 178 (citing RSA 545-A:4, II(a); RSA 545-A:1, VII(a)). Second, Langlais alleges that Brenner-Currier's transfer to her husband "was concealed from Plaintiff."[32] Concealment of the transfer is another badge of fraud under the fraudulent conveyance statute. RSA 545-A:4, II(c). Third, Langlais alleges facts stating that "[t]he transfer occurred shortly before or after a substantial debt was incurred," which is yet another badge of fraud. RSA 545-A:4, II(j). Specifically, Langlais alleges that the parties signed the Letter of Intent, which included the purchase price for Enfield, on July 16, 2019,[33] and the allegedly fraudulent transfer to Currier occurred just over a month later, on August 26, 2019.[34] Finally, Langlais alleges that Brenner-Currier was insolvent at the time she executed the Letter of Intent.[35] Because the court draws all reasonable inferences in the plaintiff's favor at this stage of litigation, see Barchock, 886 F.3d at 48, it may draw the reasonable inference from that

---

[31] Complaint ¶ 46.

[32] Complaint ¶ 51.

[33] Complaint ¶¶ 18, 20.

[34] Complaint ¶ 46.

[35] Complaint ¶ 58. While the plaintiff includes this under the Section of the complaint pertaining to the fraudulent misrepresentation claim (Count 3), the court cannot overlook that it presents a badge of fraud that is relevant to the fraudulent conveyance claim.

11

allegation that "[t]he debtor was insolvent or became insolvent shortly after the transfer was made," which is another badge of fraud.  RSA 545-A:4, II(i).

The complaint thus presents a confluence of several badges of fraud, which under the statute may "constitute conclusive evidence of an actual intent" to defraud the plaintiff, In re Coffey's Case, 157 N.H. at 178 (quoting Max Sugarman, 926 F.2d at 1254-55), and from which the court may, in this procedural posture, draw inferences leading to the conclusion that Langlais has pleaded fraudulent intent.  Moreover, the current record does not include "significantly clear evidence of a legitimate supervening purpose" behind Brenner-Currier's transfer to her spouse, which could weaken or negate the inference of fraud.  Id.  Langlais has, accordingly, sufficiently pleaded actual fraudulent intent, and Brenner-Currier's motion to dismiss the fraudulent conveyance claim against her is denied.

**C.     Fraudulent misrepresentation claim against Brenner-Currier**

Brenner-Currier also moves to dismiss the fraudulent misrepresentation claim against her. To allege fraudulent misrepresentation, a plaintiff must plead facts supporting an inference that "the defendant made a representation with knowledge of its falsity or with conscious indifference to its truth with the intention to cause another to rely upon it."  Snierson v. Scruton, 145 N.H. 73, 77 (2000), as modified (Nov. 22, 2000) (citing Patch v. Arsenault, 139 N.H. 313, 319 (1995)).  A plaintiff must also "demonstrate justifiable reliance" on that representation.  Id. (citing Gray v. First NH Banks, 138 N.H. 279, 283 (1994)).

Langlais hangs his fraudulent misrepresentation claim on the allegations that Brenner-Currier was insolvent when she executed the Letter of Intent promising to pay Langlais for Enfield,[36] and that Brenner-Currier accepted the assignment of interest in Enfield "with no intent

---

[36] Complaint ¶ 58.

12

of paying Plaintiff for his remaining interest."[37]  Langlais also alleges that he "justifiably relied upon Brenner-Currier's promise to pay as inducement to execute an Assignment of his interest" in Enfield[38] and "honestly believed" Brenner-Currier's promise to pay because of his "previous course of dealings" with her,[39] in which Brenner-Currier fulfilled payment obligations to Langlais.[40]

Brenner-Currier argues that these allegations do not state a fraudulent misrepresentation claim because they fail to plead scienter and fail to plead the particular elements of fraud. Neither argument warrants dismissal.

First, Brenner-Currier argues, Langlais fails to allege that Brenner-Currier "made a representation [to Langlais] about her solvency," instead relying on "some form of implied misrepresentation" made by signing the Letter of Intent, which falls "well short of the scienter necessary to state a claim" of fraudulent misrepresentation.[41]  But Langlais's fraudulent misrepresentation claim is not based on an actual or implied misrepresentation of Brenner-Currier's solvency, as Brenner-Currier argues.  Rather, Langlais alleges that Brenner-Currier made a false representation when she promised to pay Langlais for the interest in Enfield with no intention to carry out this promise due to her insolvency.[42]

---

[37] Complaint ¶ 60.

[38] Complaint ¶ 63.

[39] Complaint ¶ 62.

[40] See Complaint ¶ 26.

[41] See Defs.' Mem. in Supp. of Mot. to Dismiss (doc. no. 11-1) at 5.

[42] This description of the plaintiff's allegations reflects the argument presented in his opposition brief.  Langlais presented the claim differently (and with less detail) in the complaint.  Compare Complaint ¶ 58 ("In executing the Letter of Intent, despite being insolvent, Brenner-Currier misrepresented a material fact to Plaintiff") with Pl.'s Opp'n (doc. no. 12) at 8 (citing Complaint

As the First Circuit Court of Appeals has explained, "the concept of misrepresentation includes a false representation as to one's intention, such as a promise to act." Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997). The Supreme Court of New Hampshire has also recognized that "[a] representation of the maker's own intention to do or not to do a particular thing is fraudulent if he does not have that intention." Tessier v. Rockefeller, 162 N.H. 324, 332 (2011) (quoting Restatement (Second) of Torts § 530, at 64 (1977)).[43] Specifically, "[i]f, at the time he made his promise, the debtor did not <u>intend to perform</u>, then he has made a false representation . . . ." Palmacci, 121 F.3d at 787 (emphasis in original). Further, courts can infer that a promisor made a promise without the intention to perform based on the surrounding circumstances. For example, "the unreasonableness" of a promisor's belief "form[s] an evidentiary basis for a finding of intent" to defraud. Id. at 789. Fraudulent intent can also be inferred where "the defendant[] [is] insolven[t] or [has] some other reason to know that he cannot pay . . . ." Id.

---

¶¶ 59-60) ("Count [3] alleges that Brenner-Currier was insolvent at the time the letter of intent was executed and, notwithstanding making a promise to pay, Brenner-Currier had 'no intent of paying Plaintiff' for such 50% interest."). But because the court draws all reasonable inferences in the plaintiff's favor at this stage of the litigation, see Barchock, 886 F.3d at 48, the court may draw from the language in the complaint the inference fleshed out in Langlais's opposition brief.

[43] In his opposition brief, Langlais discusses Tessier as an example of a fraudulent misrepresentation claim that survived dismissal "where allegations would support a finding that 'defendants knew they had an obligation . . . and had no intention of keeping the promise.'" Pl.'s Opp'n (doc. no. 12) at 7 (quoting Tessier, 162 N.H. at 332). Brenner-Currier counters that "Plaintiff's reliance on the New Hampshire Supreme Court's opinion . . . is inappropriate" because federal law, not state law, controls the question of whether Langlais adequately pleaded fraud under Rule 9(b). Defs.' Reply (doc. no. 13) at 4 (citing Lycos, 478 F.3d at 427). In a sense, both parties are correct. The pleading requirements are governed by federal law, as Brenner-Currier argues. But the court must also assess at the motion to dismiss stage whether the facts as pleaded satisfy the elements of the claim under substantive state law. As Langlais observes, the New Hampshire Supreme Court's decision in Tessier defines and clarifies the substantive elements of fraudulent misrepresentation applicable to this case, and the court can rely on it for this purpose.

Here, by taking the alleged facts as true and drawing reasonable inferences in the plaintiff's favor, the court can infer that Brenner-Currier's promise to pay Langlais was a false misrepresentation made with scienter because Brenner-Currier was insolvent and unable to pay when she made the promise. Langlais has thus stated the misrepresentation and scienter elements of this claim through his allegations of a promise made without the intention to perform.

Second, Brenner-Currier argues that Langlais "does not allege the <u>essential details</u> of the fraud, and <u>specifically allege</u> the facts of the defendant's fraudulent actions."[44] Brenner-Currier does not further detail this argument in her briefs, but it likely refers to the particularity requirement for alleging fraud under Rule 9(b). In order to meet Rule 9(b)'s pleading requirement, Langlais must specify the "who, what, where, and when of the allegedly false or fraudulent representations." Rodi, 389 F.3d at 15. But, as discussed supra, "the specificity requirement extends only to the particulars of the allegedly misleading statement itself" and not "[t]he other elements of fraud, such as intent and knowledge . . . ." Id.

At oral argument, Brenner-Currier maintained that Langlais's claim centers on an alleged misrepresentation of Brenner-Currier's solvency that is implied within the Letter of Intent. Brenner-Currier agreed that the complaint alleges who made the representation and when and where it took place by pleading related facts about the Letter of Intent. She argued that Langlais does not satisfy the rest of the 9(b) requirement—the "what"—because Langlais does not allege that Brenner-Currier made an actual representation regarding her solvency, and that it was fraudulent.

---

[44] Defs.' Mem. in Supp. of Mot. to Dismiss (doc. no. 11-1) at 5 (emphasis in original) (quoting Webber v. Deck, 2020 U.S. Dist. LEXIS 5214, at *23 (D.N.H. Jan. 23, 2020)).

The defendant's argument is misplaced because, as discussed above, the allegedly misleading statement in this claim is Brenner-Currier's promise to pay for Enfield. Langlais alleges the facts surrounding this promise with requisite specificity by attaching the Letter of Intent—which includes Brenner-Currier's promise to pay—as Exhibit 1 to the complaint and by alleging the parties, subject matter, and date of execution of the Letter of Intent within the complaint.[45]

Since Langlais's allegations satisfy the pleading standards for scienter and misrepresentation, the court denies Brenner-Currier's motion to dismiss Langlais's fraudulent misrepresentation claim against her.

## IV.   Conclusion

Langlais has not satisfied the pleading standard to state any claims against Enfield, but Langlais has pleaded the facts necessary to state claims of fraudulent conveyance and fraudulent misrepresentation against Brenner-Currier. Defendants' motion to dismiss[46] is therefore GRANTED-IN-PART, to the extent that all of Langlais's claims against Enfield are dismissed, and DENIED-IN-PART, as to the fraud claims against Brenner-Currier.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: October 2, 2020

cc:   John R. Hughes, Esq.
      Joseph Gardner Mattson, Esq.

---

[45] Complaint ¶¶ 3-5, 18-20.

[46] Doc. no. 11.